## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 04-29 (JRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS COUNTS 1 AND 2 OF THE SUPERSEDING INDICTMENT** |
| MOHAMED ABDULLAH WARSAME, | |
| Defendant. | |

Thomas M. Hollenhorst and William H. Koch, Assistant United States Attorneys, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; Joseph N. Kaster, **UNITED STATES DEPARTMENT OF JUSTICE**, 10th and Constitution Avenue NW, Room 2649, Washington DC, 20530, for plaintiff.

David C. Thomas, **LAW OFFICES OF DAVID C. THOMAS**, 53 West Jackson Boulevard, Suite 1362, Chicago, IL 60604; Andrea K. George, Assistant Federal Public Defender, **OFFICE OF THE FEDERAL PUBLIC DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Defendant Mohamed Abdullah Warsame ("Warsame") is charged with conspiracy to provide material support and resources to a designated Foreign Terrorist Organization and with providing material support and resources to a designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B. Warsame is further charged with making false statements in violation of 18 U.S.C. § 1001(a)(2). This matter is before the Court on Warsame's Motion to Dismiss Counts 1 and 2 of the Superseding Indictment. Warsame argues that § 2339B violates the First, Fifth, and Sixth Amendments of the

United States Constitution.  For the reasons discussed below, the Court denies Warsame's motion.

## BACKGROUND

On June 21, 2005, the prosecution filed a five-count Superseding Indictment against Warsame.  Counts One and Two of the Superseding Indictment charged Warsame with conspiracy to provide and with providing material support and resources to a designated Foreign Terrorist Organization ("FTO"), in violation of 18 U.S.C. § 2339B.  According to the Superseding Indictment, Warsame traveled to Afghanistan and Pakistan between 2000 and 2001 and attended Al Qaeda training camps.  The Superseding Indictment also alleges that Al Qaeda paid Warsame's travel expenses to return to Canada, that Warsame sent money back to an Al Qaeda associate as repayment, and that Warsame maintained communications with individuals associated with Al Qaeda after his return to Canada.

On February 16, 2007 the Court issued an Order granting in part Warsame's motions for a bill of particulars.  The Court determined that the charges of material support contained in the Superseding Indictment were not sufficiently detailed to allow Warsame to effectively challenge the constitutionality of § 18 U.S.C. § 2339B.  The Court therefore ordered the prosecution to file a bill of particulars specifying the activities it contends constitute material support and resources, as enumerated in the statutory definition of 18 U.S.C. § 2339A(b)(1).  On March 16, 2007, the prosecution filed a bill of particulars specifying the two counts of material support contained in the

Superseding Indictment.  The prosecution alleged that Warsame conspired to provide and provided material support and resources to a FTO in the form of "currency," "personnel," and "training."  *See* 18 U.S.C. § 2339(A)(b)(1).

## ANALYSIS

Warsame presents three separate arguments attacking the constitutionality of § 2339B and its related statutory provisions.  First, Warsame contends that § 2339B violates the First Amendment because it restricts freedom of association and is unconstitutionally vague and overbroad.  Second, Warsame argues that § 2339B violates the Due Process Clause of the Fifth Amendment because it imposes criminal liability in the absence of personal guilt.  Third, Warsame contends that the statutory procedure for designating FTO's under 8 U.S.C. § 1189 violates the First, Fifth, and Sixth Amendments because it deprives a designated organization of notice and a hearing, and precludes a defendant from challenging the validity of the FTO designation in a subsequent criminal prosecution.  Before addressing the merits of Warsame's constitutional arguments, which present issues of first impression in this circuit, the Court considers the relevant statutory framework at issue, as well as the adequacy of the Superseding Indictment and the bill of particulars.

## I.    STATUTORY FRAMEWORK

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") in 1996, in an effort to eradicate fundraising in the United States for foreign terrorist organizations.  *See* Pub. L. No. 104-132, 110 Stat. 1214.  Recognizing the increasing

sophistication of terrorist organizations, which often raise money for international terrorism under the guise of humanitarian or political causes, Congress criminalized the provision of material support or resources to foreign terrorist organizations that are designated by the Secretary of State.   Section 303(a) of the AEDPA, codified at 18 U.S.C. § 2339B, provides that

> [w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339B(a)(1).[1]   "Material support or resources" is further defined as

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1).  To violate § 2339B, a person "must have knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged or engages in terrorism."  18 U.S.C. § 2339B(a)(1).

Under 8 U.S.C. § 1189, the Secretary of State is authorized to designate foreign terrorist organizations if the Secretary finds that (1) the organization is a foreign organization, (2) the organization engages in terrorist activity or retains the capability and

---

[1]  Section 2339B was amended in 2001 under the USA Patriot Act, Pub. L. 107-56, § 810(d), 115 Stat. 380 (Oct. 26, 2001), and again in 2004 pursuant to the Intelligence Reform and Terrorism Prevention Act,  ("IRTPA"), Pub. L. 108-458, § 6603(c), 118 Stat. 3762-63 (Dec. 17, 2004).   These amendments are discussed *infra*.

intent to engage in terrorist activity, and (3) the terrorist activity threatens national security or the security of United States nationals. 8 U.S.C. § 1189(a)(1). The Secretary is not required to notify an organization that is being considered for designation as a FTO.[2] *See* 8 U.S.C. § 1189(a)(2)(A). Instead, prior to an organization's designation, the Secretary must notify select members of Congress by classified communication and shall publish the designation in the Federal Register seven days after the notification. 8 U.S.C. § 1189(a)(2)(A)(i)-(ii). Additionally, the Secretary may consider classified information in making a designation, which is unavailable for review by the designated organization. 8 U.S.C. § 1189(a)(3)(B). As such, the FTO designation procedure does not afford a designated FTO an opportunity to submit or review evidence on its behalf prior to its designation.

Following its designation, however, a FTO may seek judicial review in the Court of Appeals for the District of Columbia not later than 30 days after publication in the Federal Register. 8 U.S.C. § 1189(c)(1). Under § 1189(a)(8), "a defendant in a criminal action . . . shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing." 8 U.S.C. § 1189(a)(8).

---

[2] In 2001, however, the Court of Appeals for the District of Columbia held that an organization's procedural due process rights required the Secretary to afford "entities under consideration notice that the designation is impending." *Nat'l Council of Resistance of Iran v. Dept. of State*, 251 F.3d 192, 208 (D.C. Cir. 2001).

## II.      THE BILL OF PARTICULARS

On February 16, 2007, the Court granted in part Warsame's motions for a bill of particulars, finding that the prosecution's failure to provide specific charges in the Superseding Indictment impeded Warsame's ability to prepare an effective defense.  In particular, the Court found that Warsame's as-applied constitutional challenge to 18 U.S.C. § 2339B required a more precise description of the material support allegedly provided by Warsame.  On March 16, 2007, the prosecution filed with the Court its bill of particulars.  The prosecution alleged that Warsame provided material support or resources to Al Qaeda in the form of "personnel," "currency," and "training."  The prosecution specified in subsequent briefing that Warsame allegedly provided "personnel" by voluntarily participating in an Al Qaeda training camp in Afghanistan. The prosecution further alleged that Warsame provided "currency" by sending money to a former Al Qaeda training camp instructor, and that he provided "training" by giving English-language lessons to Al Qaeda members in Pakistan.

The Court finds that the bill of particulars is sufficiently precise to enable Warsame to effectively challenge the constitutionality of § 2339B as it applies to his alleged conduct in this case.  As discussed below, Warsame's vagueness challenge to § 2339B requires an examination of whether the statute provides sufficient notice of the criminality of Warsame's alleged conduct.  As such, the prosecution must set forth both the precise charges of material support under 18 U.S.C. § 2339A(b)(1), as well as specific factual allegations of criminal conduct.  Based on the allegations described in the

Superseding Indictment and the bill of particulars, the Court finds that Warsame now has sufficient information to challenge § 2339B on constitutional grounds.

Warsame contends that the bill of particulars cannot cure an alleged pleading deficiency of the Superseding Indictment, and that the Superseding Indictment should therefore be dismissed.  Under Rule 7(c) of the Federal Rules of Criminal Procedure, an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  The Eighth Circuit has held that an indictment is "legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution."  *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993).

The Court finds that the Superseding Indictment fairly informs the defendant of the charges against which he must defend.  Counts 1 and 2 of the Superseding Indictment charge Warsame with providing and conspiring to provide "material support and resources, as that term is defined in 18 U.S.C. § 2339A(b)," to a FTO.  While the referenced definition of "material support and resources" in § 2339A(b) encompasses a variety of prohibited activities, those activities are sufficiently specific to inform Warsame of the alleged charges against him and thus to satisfy minimum due process requirements.  *Cf. Russell v. United States*, 369 U.S. 749, 767 (1962) (dismissing an indictment that alleged defendants had "refuse[d] to answer any question pertinent to the question under inquiry" by a Congressional subcommittee under 2 U.S.C. § 192, but that

failed to specify the precise question under inquiry).  Indeed, the Court determined that a bill of particulars was necessary not because the Superseding Indictment was deemed constitutionally defective on its face, but rather because Warsame needed more particular allegations to effectively mount an as-applied challenge to the applicable statutory terms under §§ 2339B and 2339A(b).  The provision of more detailed allegations by the prosecution cannot now be used as evidence that the core allegations contained in the Superseding Indictment were legally insufficient as a matter of due process.  Nor should the prosecution be barred from relying on allegations in the bill of particulars merely because they are more particularized than the allegations contained in the Superseding Indictment.  *See United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) ("While a bill of particulars or discovery cannot save a 'defective indictment,' where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense.").

By the same logic, the prosecution may not now expand its allegations against Warsame beyond the alleged provision of "personnel," "training," and "currency," as detailed in the prosecution's bill of particulars.[3]  Having sought a bill of particulars, Warsame is entitled to rely on the bill as setting forth the sum of allegations against him.

---

[3] The prosecution may introduce additional factual details to prove its charges at trial.  It may not, however, add additional charges of material support on the eve of trial without formal approval from this Court.

Any such expansion of charges would deprive Warsame of an adequate opportunity to prepare his defense.

## III.    WARSAME'S FIRST AMENDMENT CHALLENGE

The First Amendment states that Congress shall "make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble."  U.S. Const. amend. I.  Warsame argues that § 2339B violates his freedom of association under the First Amendment because it lacks a specific intent element and thereby imposes guilt by association.  Warsame further challenges § 2339B on grounds that it is unconstitutionally vague and overbroad.  The Court discusses each argument in turn.

### A.    Freedom of Association

Warsame first contends that § 2339B is unconstitutional because it restricts his First Amendment right of association.  Noting that a FTO may engage in both legal and illegal activities, Warsame contends that § 2339B violates his right of association because it does not require a showing of specific intent to further the FTO's illegal activities.  As such, Warsame argues, § 2339B impermissibly criminalizes mere membership in, or association with, a terrorist organization.  Warsame further argues that § 2339B should be subject to strict scrutiny review because it prohibits financial contributions that have an expressive component.

It is well settled that the First Amendment "restricts the ability of the state to impose liability on an individual solely because of his association with another."  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19 (1982).  The Supreme Court has

observed that a "blanket prohibition of association with a group having both legal and illegal aims . . . [would pose] a real danger that legitimate political expression or association would be impaired." *Scales v. United States*, 367 U.S. 203, 229 (1961). Mere membership, without more, in an organization that has legal and illegal goals may not be prohibited or punished under the First Amendment. *United States v. Hammoud*, 381 F.3d 316, 328 (4th Cir. 2004). Instead, a statute that prohibits association with such an organization "must require a showing that the defendant specifically intended to further the organization's unlawful goals." *Id.* (citing *Elfbrandt v. Russell*, 384 U.S. 11, 15-16 (1966)); *see also Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1022 (7th Cir. 2002) ("[I]n order to impose liability on an individual for association with a group, it is necessary to establish that the group possessed unlawful goals and that the individual held a specific intent to further those illegal aims.").

As noted, Warsame contends that his associational rights under the First Amendment are violated because § 2339B does not require a specific intent to further a FTO's terrorist activities. Section 2339B applies to a person who "knowingly provides material support or resources to a foreign terrorist organization." The Court agrees that the plain language of § 2339B does not require that the defendant have a specific intent to further the illegal activities of the terrorist organization. Further, Congress's inclusion of an explicit *mens rea* requirement in § 2339A strongly suggests that it chose not to include a specific intent requirement in § 2339B.[4] *See Humanitarian Law Project v. Gonzales*,

---

[4] Section 2339A(a) imposes criminal liability upon one who "provides material support or resources or conceals or disguises the nature, location, source, or ownership of material

380 F. Supp. 2d 1134, 1145-46 (C.D. Cal. 2005) (noting that courts "must assume that Congress knows how to include a specific intent requirement when it so desires, as evidenced by § 2339A, and that Congress acted deliberately in excluding such an intent requirement in § 2339B").   Indeed, in enacting § 2339B, Congress was concerned that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any* contribution to such an organization facilitates that conduct."   AEDPA, Pub. L. 104-132, § 301(a)(7) (emphasis added); *see Humanitarian Law Project*, 380 F. Supp. 2d at 1145-46; *see also Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000) ("*HLP I*") (noting Congress's concern that because money is fungible, "giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts").   Finally, Congress amended § 2339B in 2004 when it passed the Intelligence Reform and Terrorism Prevention Act ("IRTPA"), requiring the prosecution to show that a donor knew either that the recipient was a foreign terrorist organization or that it engaged in terrorist activities.[5]   In sum, the Court finds that §

---

support or resources, knowing or intending that they are to be used in preparation for, or in carrying out" terrorist activities.   18 U.S.C. § 2239A(a).

[5] Specifically, under § 2339B "a person must have knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged or engages in terrorism."   18 U.S.C. § 2339B(a)(1).   The IRTPA amendment followed the Ninth Circuit's decision in *Humanitarian Law Project v. U.S. Department of Justice*, which construed § 2339B to require that a defendant know either that the organization is a terrorist organization, or that the organization engaged in terrorist activities.   352 F.3d 382, 400 (9th Cir. 2003) ("*HLP II*").   At the same time, Congress implicitly rejected another district court's construction of § 2339B in *United States v. Al-Arian*, 329 F. Supp. 2d 1294, 1299-1300, 1303-05 (M.D. Fla. 2004).   *Al-Arian* had construed § 2339B as requiring a specific intent to further an organization's terrorist activities, in order to avoid constitutional questions regarding freedom of association and the due process requirement of personal guilt.   *Id.*

2339B does not contain a requirement of specific intent to further an organization's terrorist activities.

Having determined that § 2339B contains no such specific intent requirement, the Court turns to Warsame's contention that the statute therefore unconstitutionally infringes his First Amendment right of association.  The Court finds that Warsame's argument incorrectly assumes that § 2339B criminalizes mere membership in or association with a terrorist organization.  However, § 2339B prohibits the *conduct* of providing material support and resources to FTO's.  As such, the statute is qualitatively different from laws that impose liability on a defendant "solely because of his association with another." *Claiborne Hardware*, 458 U.S. at 918-19; *Healy v. James*, 408 U.S. 169, 192 (1972) (noting that "the critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not").  Section 2339B does not prohibit membership in Al Qaeda, nor does it prohibit persons from espousing or sympathizing with the views of Al Qaeda, however unpopular those views might be. *See Gonzales*, 380 F. Supp. 2d at 1143-44.  Simply put, "conduct giving rise to liability under § 2339B . . . does not implicate associational or speech rights." *Boim*, 291 F.3d at 1026.  In so deciding, the Court is in agreement with each of the courts of appeals to have considered this question. *See Hammoud*, 381 F.3d at 329 (4th Circuit); *HLP I*, 205 F.3d at 1135-36 (9th Circuit); *Boim*, 291 F.3d at 1026 (7th Circuit); *People's Mojahedin Org. of Iran*, 327 F.3d 1238, 1244 (D.C. Cir. 2003).

Warsame argues that the *Scales* Court's prohibition on guilt by association applies both to membership statutes and to statutes that regulate conduct.[6]   However, *Scales* sought to prevent "conviction on what otherwise might be regarded as merely an expression of sympathy with the alleged criminal enterprise, unaccompanied by *any significant action* in its support or any commitment to undertake such action."  *Scales*, 367 U.S. at 228 (emphasis added).  In other words, the prohibition on guilt by association proscribes statutes that regulate conduct only to the extent that the conduct is deemed protected expression or association.  Section 2339B does not criminalize expression or association.  Rather, § 2339B proscribes action, such as providing a terrorist organization with currency, training, expert advice or assistance, or communications equipment.  The kinds of activities proscribed under § 2339B do not amount to mere expressions of sympathy with a designated terrorist organization.   The Court thus finds that § 2339B does not impose guilt by association as defined in *Scales*.

For these reasons, the Court rejects Warsame's argument that § 2339B violates his right of association under the First Amendment because it does not require a showing that Warsame specifically intended the underlying terrorist activity.

Warsame further contends that the Court must apply strict scrutiny to § 2339B because it regulates financial contributions to organizations that engage in some form of

---

[6] Specifically, Warsame points to the Supreme Court's pronouncement in *Scales* that "when imposition of a punishment on a status *or on conduct* can only be justified by reference to the relationship of that status *or conduct* to other concededly criminal activity . . . that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment."  *Scales*, 367 U.S. at 224-25 (emphasis added).

political expression.    Contributions to political candidates or organizations receive

heightened First Amendment protection because they have an expressive component and

demonstrate the donor's association with the candidate or organization.  *Buckley v. Valeo*,

424 U.S. 1, 16-17 (1976); *McConnell v. Federal Election Comm'n*, 540 U.S. 93 (2003).

However, such contributions are deemed protected political speech only when made to an

organization "whose overwhelming function [is] political advocacy."  *HLP I*, 205 F.3d at

1134-35.  Al Qaeda is not a political advocacy group.  *Cf. Hammoud*, 381 F.3d at 328 n.3

(rejecting argument that contributions to Hezbollah are protected as political speech

because Hezbollah is not a political advocacy group).   The Court finds that § 2339B's

prohibition on financial contributions to terrorist organizations is directed not at speech

but rather at conduct, invoking the intermediate scrutiny standard found in *United States*

*v. O'Brien*, 391 U.S. 367 (1968).

> Under *O'Brien*, a statute is valid
>
> if it is within the constitutional power of the Government; if it furthers an
> important or substantial governmental interest; if the governmental interest
> is unrelated to the suppression of free expression; and if the incidental
> restriction on alleged First Amendment freedoms is no greater than is
> essential to the furtherance of that interest.

*Id.* at 377.  The Court finds that § 2339B satisfies the four elements under *O'Brien*.  First,

§ 2339B is within the government's constitutional power to regulate interactions between

citizens and foreign entities.  *Hammoud*, 381 F.3d at 329 (citing *Regan v. Wald*, 468 U.S.

222, 244 (1984)).    Second, the government's interest in preventing the spread of

international terrorism is substantial.    *Id.*; *Reno*, 205 F.3d at 1135.    Third, the

government's interest in preventing international terrorism is unrelated to the suppression

of free expression.  As noted above, under § 2339B Warsame remains free to sympathize with or advocate in favor of Al Qaeda.  Finally, any incidental restrictions on Warsame's freedom of expression are no greater than necessary to further the government's substantial interest.  As discussed above, membership and association alone are not prohibited under § 2339B.  For these reasons, the Court concludes that § 2339B satisfies intermediate scrutiny under the *O'Brien* factors.

The Court therefore finds that § 2339B does not violate Warsame's First Amendment right of association.  As a result, the Court denies Warsame's motion to dismiss on this ground.

### B. Overbreadth

Warsame next argues that § 2339B violates the First Amendment because it is overbroad.  A statute is overbroad if it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003).  Because the overbreadth doctrine allows for facial invalidation of a statute, the Supreme Court has recognized that the doctrine is "strong medicine" to be employed "with hesitation." *New York v. Ferber*, 458 U.S. 747, 769 (1982).  Thus, an overbreadth challenge will rarely succeed against a statute that does not specifically regulate speech. *Hicks*, 539 U.S. at 124; *United States v. Afshari*, 412 F.3d 1071, 1079 (9th Cir. 2005) (noting that § 2339B regulates non-expressive financial contributions and therefore is subject to less exacting scrutiny).

Warsame argues that the lack of a specific intent requirement renders § 2339B substantially overbroad in relation to its legitimate sweep.  According to Warsame, the absence of a specific intent requirement in § 2339B prohibits even those contributions with an expressive component, and thus sweeps too broadly.  While the prohibitions of § 2339B may include some limited expression protected under the First Amendment, the Court cannot conclude that § 2339 punishes a substantial amount of free speech in relation to its plainly legitimate sweep.  As discussed above, § 2339B does not specifically regulate membership or association, but rather prohibits the conduct of providing material support and resources to a designated FTO.  The Court finds that Warsame has failed to demonstrate that any overbreadth of § 2339B is substantial.  *See Hammoud*, 381 F.3d at 330 (denying an overbreadth challenge to § 2339B despite the fact that it prohibits some plainly legitimate activity, such as teaching members of an FTO how to apply for grants to further humanitarian aims).  For these reasons, the Court denies Warsame's motion to dismiss § 2339B on grounds that it is unconstitutionally overbroad.

### C.     Vagueness

Warsame next challenges § 2339B on grounds that the terms "currency," "personnel," and "training" are unconstitutionally vague under the First and Fifth Amendments.[7]  *See* 18 U.S.C. § 2339A(b) (defining "material support and resources" to

---

[7] While the void for vagueness doctrine is founded on the Fifth Amendment guarantee of due process, a greater degree of statutory precision is generally required of laws that implicate the First Amendment.  *See Grayned v. City of Rockford*, 408 U.S. 104, 109 n.5 (1972).

include currency, personnel, and training). A criminal statute must "'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Orchard*, 332 F.3d 1133, 1137-38 (8th Cir. 2003) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). A party may challenge a statute on vagueness grounds by arguing either that the statute is vague as applied to the relevant conduct at issue, or that the statute is facially vague.[8] *See Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438-39 (8th Cir. 1998).

In an as-applied vagueness challenge, a party who has notice of the criminality of his own conduct from the challenged statute may not attack it on grounds that the statute does not give fair warning to other conduct not at issue in the case. *Parker v. Levy*, 417 U.S. 733, 756 (1974). In other words, "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.*; *Woodis*, 160 F.3d at 438. In a facial vagueness challenge, courts generally uphold a statute unless it is "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494-95 (1982). However, laws that implicate constitutional rights receive a more stringent facial vagueness test. *Id.* at 499. In the First Amendment context, for example, facial invalidation is appropriate where the law reaches a substantial amount of protected conduct, even if the law is not vague in *all* its applications. *Id.*; *Levy*, 417 U.S. at 760. Warsame argues that § 2339B impacts his First Amendment right of association. Thus,

---

[8] It is unclear whether defendant presents both as-applied and facial challenges to § 2339B. The Court will therefore address both types of vagueness challenges.

to demonstrate facial vagueness here, Warsame must show that the statute reaches a substantial amount of constitutionally protected conduct. *Hoffman Estates*, 455 U.S. at 497.

With respect to Warsame's as-applied challenge, the Court finds that the statutory terms at issue are not vague as applied to at least some of the specific conduct alleged in this case. As to "currency," the Court finds that that term is not so indefinite that it deprives Warsame of notice as to what conduct is proscribed. *See Hammoud*, 381 F.3d at 331 (rejecting an as-applied vagueness challenge to "currency" because "[t]here is nothing at all vague about the term 'currency'"). The prosecution alleges that Warsame sent money overseas to an Al Qaeda member to repay a loan. The Court finds that the statute clearly applies to the alleged conduct in this case.

Warsame next argues that the term "personnel" is unconstitutionally vague as applied, noting that the Ninth Circuit in *HLP I* struck the "personnel" language on vagueness grounds. 205 F.3d at 1137-38. The plaintiffs in that case wished to advocate on behalf of a designated FTO before the United Nations and the United States Congress, but were afraid that they would be prosecuted for providing "personnel" under § 2339B. *Id.* The court struck the term "personnel" as unconstitutionally vague because "[s]omeone who advocates the cause of the [FTO] could be seen as supplying them with personnel; it even fits under the government's rubric of freeing up resources." *Id.*; *see also United States v. Sattar*, 272 F. Supp. 2d 348, 358-59 (S.D.N.Y. 2003) (finding "personnel" vague as applied to an attorney whose client is the leader of a FTO). Here, the prosecution alleges that Warsame voluntarily participated in an Al Qaeda training

camp in Afghanistan, and that Warsame remained in contact with alleged Al Qaeda associates after he had returned to Canada.  The Court finds that the alleged participation in an Al Qaeda training camp is unambiguously encompassed within the plain meaning of "personnel,"[9] and that the term "personnel" gives Warsame adequate notice of the criminality of attending an Al Qaeda training camp.  *See United States v. Goba*, 220 F. Supp. 2d 182, 194 (W.D.N.Y. 2002) (rejecting vagueness challenge to "personnel" during pre-trial detention hearing, where defendants allegedly attended al Qaeda training camps in Afghanistan); *see also United States v. Lindh*, 212 F. Supp. 2d 541, 574 (E.D. Va. 2002) (rejecting vagueness challenge to "personnel" where defendant was alleged to have fought in combat on behalf of the Taliban).  The Court concludes that the current definition of the term "personnel" is not vague as applied to Warsame's alleged participation in an Al Qaeda training camp.

However, allegations that Warsame remained in communications with Al Qaeda associates after he returned to Canada are not sufficient, without more, to survive a vagueness challenge.   While such evidence may be admissible at trial for limited purposes, it would be inadmissible as evidence of guilt unless the prosecution ties such evidence to additional conduct that would constitute provision of "personnel" under the statute.[10]

---

[9] Moreover, the Court notes that Congress subsequently amended § 2339B in 2004 to clarify the term "personnel," and on remand the *Humanitarian Law Project* district court determined that "personnel" was not vague as applied.

[10] Because the prosecution has not specified the nature of these additional factual allegations, the Court will determine their admissibility at trial.

Finally, Warsame argues that § 2339B's prohibition on "training" is unconstitutionally vague as applied because he could not have understood his own conduct to be proscribed under the statute.   The prosecution contends that Warsame provided "training" to Al Qaeda by teaching English at an Al Qaeda clinic in Afghanistan.   Warsame points to the *Humanitarian Law Project* cases in support of his contention.   In *Humanitarian Law Project v. Reno*, 9 F. Supp. 2d 1176, 1204 (C.D. Cal. 1998), the court found "training" vague because it easily reached protected conduct in that case, to wit, teaching FTO members how to seek redress for human rights violations in the United Nations.   Congress subsequently amended the AEDPA, defining "training" as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge."   18 U.S.C. § 2339A(b)(2).   On remand from the Ninth Circuit, the district court again found "training" unconstitutionally vague as amended, noting that "it is easy to imagine expression that falls within the bounds of this term," including defendants' conduct of teaching members how to petition the United Nations.   *Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d 1134, 1150 (C.D. Cal. 2005).   The court further posited that the "result would be different if the term 'training' were qualified to include only military training or training in terrorist activities."   *Id.*

As these cases make clear, an individual who provides training to a FTO in support of a wholly lawful objective, such as petitioning the United Nations for human rights violations, is likely to be uncertain whether § 2339B applies to his conduct.   An individual who provides training in aid of a FTO's military activities, on the other hand, is much more likely to understand that the conduct is made criminal by the statute.   *See*

*id.*; *cf. Lindh*, 212 F. Supp. 2d at 572 (finding that "personnel" is not vague as applied to the "hard core" conduct of participating in military activity on behalf of a FTO).  Thus, while a defendant's intent to further terrorist activities is not required under § 2339B, the context and objectives of the defendant's conduct, as well as its proximity to "hard core" military activity, are relevant to a determination of whether the defendant would understand his conduct to be prohibited under the statute.  *See, e.g.*, *United States v. Assi*, 414 F. Supp. 2d 707, 718 (E.D. Mich. 2006) (stating that "an individual who furnishes weaponry or equipment with clear military applications can claim no such uncertainty as to whether he has provided 'material support' to an FTO within the meaning of § 2339B").

The Court is not convinced that the term "training" is so vague that Warsame could not have understood his conduct to be prohibited under § 2339B.  Here, the prosecution alleges that Warsame provided English lessons in an Al Qaeda clinic in Kandahar, Afghanistan, in part to assist nurses in reading English-language medicine labels.  According to the prosecution, the nurses in the clinic attended to Al Qaeda members who were participating in nearby terrorist training camps. The alleged English-language training in this case has direct application to a FTO's terrorist activities, as it would likely speed the healing and eventual return of terrorist militants to Al Qaeda training camps.  Further, the training was provided in an Al Qaeda clinic in Kandahar, in close proximity to terrorist training camps.  As such, the Court finds that this alleged conduct is closely tied to terrorist activity, such that Warsame would likely understand

his conduct to be criminalized as "training" under § 2339B.[11]  *See United States v. Shah*, 474 F. Supp. 2d 492, 497-98 (S.D.N.Y. 2007) (upholding application of "personnel" to a doctor alleged to have provided medical support to wounded Al Qaeda jihadists).  The Court therefore concludes that "training" is not unconstitutionally vague as applied to this alleged conduct.[12]

However, as with the definition of "personnel," the Court finds that mere allegations that Warsame taught English at an Al Qaeda clinic, without more specific allegations tying that conduct to terrorist activity, are not sufficient to survive a vagueness challenge with respect to the term "training."  For example, an individual who teaches English so that patients in the clinic can teach the Koran in the English language is unlikely to understand that conduct to be prohibited as "training," since such activity has no direct connection with underlying military or terrorist activities.  Thus, the Court finds that the term "training" is unconstitutionally vague as applied to such conduct.  Any such evidence would therefore be inadmissible as evidence of guilt unless it is tied to additional conduct that constitutes "training" under § 2339B.

---

[11] The Court notes that the record does not clearly reveal the extent to which these nurses relied on English-language training to effectively treat Al Qaeda members.  To the extent the term "training" survives an as-applied vagueness challenge based on allegations that nurses used English-language training to treat Al Qaeda members, the prosecution will be required to prove these allegations at trial to show a violation of § 2339B.

[12] The Court further notes that § 2339B excludes from criminal prosecution the provision of "medicine" to designated FTO's.  18 U.S.C. § 2339A.  "Congress intended the term 'medicine' to 'be understood to be limited to the medicine itself, and does not include the vast array of medical supplies.'"  *Shah*, 474 F. Supp. at 495 (quoting H.R. Rep. 104-518, at 114 (1996)) The Court finds that the provision of English language lessons to nurses to assist in the medical treatment of injured Al Qaeda militants does not fall within the statutory exception for "medicine."  *See id.* at 497 (finding that the provision of medical support to wounded Al Qaeda operatives does not fall within the "medicine" exception).

As to Warsame's facial challenge, the Court finds that § 2339B does not reach a substantial amount of constitutionally protected speech or association. As discussed above, § 2339B does not prohibit mere association or membership, but rather criminalizes the conduct of providing material support to designated terrorist organizations. Even if § 2339B encompasses a limited amount of speech protected by the First Amendment, Warsame has not demonstrated that the amount of regulated speech is so substantial as to warrant facial invalidation. *See United States v. Marzook*, 383 F. Supp. 2d 1056, 1066 (N.D. Ill. 2005) (rejecting defendant's facial vagueness challenge because he failed to demonstrate that § 2339B is unconstitutionally vague in at least a substantial number of cases in which it could apply).

For these reasons, the Court concludes that the terms "currency," "personnel," and "training" are not unconstitutionally vague as applied to Warsame's conduct. However, allegations that Warsame remained in communications with Al Qaeda, without more, are insufficient to survive a vagueness challenge and may be deemed inadmissible as evidence of guilt at trial on this basis. Similarly, allegations that Warsame taught English in an Al Qaeda clinic, without more specific facts tying that conduct to terrorist activity, are not sufficient to survive a vagueness challenge with respect to "training." The Court further concludes that § 2339B is not facially vague. For these reasons, the Court denies Warsame's motion to dismiss on grounds that § 2339B is unconstitutionally vague.

## IV.    WARSAME'S FIFTH AMENDMENT CHALLENGE

Warsame argues that § 2339B violates the Fifth Amendment's Due Process Clause because it allows criminal liability in the absence of personal guilt.[13]   Specifically, Warsame contends that § 2339B violates his due process rights because it does not require the prosecution to prove that he specifically intended to further terrorist activities. A statute offends due process if it "impermissibly imputes guilt to an individual merely on the basis of his associations and sympathies, rather than because of some concrete, personal involvement in criminal conduct."   *Scales*, 367 U.S. at 220.   Under *Scales*, punishment "based on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity."   *Id.* at 224-25.   However, such a relationship "must be sufficiently substantial to satisfy the concept of personal guilt."   *Id.* at 225.

A heightened showing of scienter was required in *Scales* because the statute at issue in that case could otherwise be read as criminalizing mere association with an organization that engaged in illegal activities.   As discussed above, however, the Court finds that § 2339B does not criminalize mere association with a designated FTO.   Rather, § 2339B specifically prohibits the conduct of providing material support or resources to such an organization.   In other words, § 2339B requires that the prosecution show a donor's "concrete, personal involvement in criminal conduct," *id.* at 220, rather than his

---

[13] The due process argument is closely related to Warsame's First Amendment argument. However, the Fifth Amendment requirement of "personal guilt" is concerned with criminal penalties "imposed on persons who are related by status or conduct to a proscribed organization," while the First Amendment prohibits punishment by reason of association alone. *HLP II*, 352 F.3d at 394-95.

mere association with it.  On this basis, the Court finds that the requirement of a heightened scienter requirement under *Scales* is inapplicable to § 2339B.

This is not to say, however, that § 2339B requires no showing of scienter at all. Indeed, the Court must still determine whether the showing of scienter that § 2339B does require is sufficient to meet the due process standard of personal guilt.  Section 2339B is not a strict liability statute.  It requires that the prosecution prove that a donor provided material support to an organization *knowing* either that the organization was a designated FTO, or that it engaged or engages in terrorist activity or terrorism.   18 U.S.C. § 2339B(a)(1).  Congress enacted § 2339B based on the finding that "foreign terrorist organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."  AEDPA, Pub. L. 104-132, § 301(a)(7).  In light of these findings, Congress could reasonably have determined that the knowing provision of material support to terrorist organizations should itself be criminalized, even if the donor does not specifically intend the underlying terrorist activity.  *See Liparota v. United States*, 471 U.S. 419, 424 (1985) ("The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes.")  Given the inherent propensity of terrorist organizations to use any contributions to engage in terrorist activity, the Court finds that assigning criminal liability to a donor who knows the recipient is a terrorist organization, or that it engages in terrorism, satisfies minimal requirements of due process.

Only one district court has concluded otherwise.  *See United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1339, *reconsideration denied*, 329 F. Supp. 2d 1294 (M.D. Fla.

2004).   In *Al-Arian*, the district court read § 2339B to require a showing that the defendant specifically intended the underlying terrorist activity, finding that the absence of such a requirement rendered the statute constitutionally suspect on due process and First Amendment grounds.[14]  *Id.* at 1339.   The *Al-Arian* court was concerned that without an additional intent requirement, § 2339B would criminalize wholly innocent conduct. *Id.* at 1337-38.   For example, the court hypothesized that a cab driver who drives a passenger from a New York airport to the United Nations, knowing that the passenger is a member of a FTO, could be prosecuted for providing "transportation" under the statute. *Id.*  Warsame urges this Court to follow *Al-Arian* and strike § 2339B as unconstitutional.

However, the reasoning of *Al-Arian* is not persuasive, and every other court to consider this issue has declined to follow it.   *See, e.g.*, *Assi*, 414 F. Supp. 2d at 724; *United States v. Paracha*, 2006 WL 12768, at *25 (S.D.N.Y. Jan. 3, 2006); *Marzook*, 383 F. Supp. 2d at 1070; *Humanitarian Law Project v. Gonzales*, 380 F. Supp. 2d at 1147. Indeed, it is unlikely that the activities described in the *Al-Arian* hypotheticals would be criminalized under § 2339B, as they involve the provision of support to an individual who happens to be a member of a FTO.   Under the plain language of § 2339B, however, the government must prove that the defendant "knowingly provides material support or resources to a foreign terrorist *organization*," rather than to individuals who happen to be FTO members.   18 U.S.C. § 2339B(a)(1) (emphasis added); *Paracha*, 2006 WL 12768, at

---

[14] Congress subsequently amended § 2339B under the IRTPA, but did not include the additional scienter requirement as construed by the *Al-Arian* court.   As discussed above, the Court concludes that Congress did not intend to include a heightened scienter requirement in § 2339B.   The Court therefore focuses its inquiry on the constitutionality of § 2339B.

*29-30.  In other words, even where a donor's contribution to an individual FTO member confers some benefit upon the terrorist organization, the prosecution must prove that the donor knew that the intended recipient of his contribution was a designated FTO, or an organization that engages in terrorist activity.[15]

Further, to the extent *Al-Arian* is concerned with the potential criminalization of otherwise innocent conduct, courts have addressed such due process concerns through vagueness challenges to § 2339B, rather than by engrafting an additional intent requirement at odds with the plain language and congressional intent of § 2339B.  Thus, an additional intent requirement "is not necessary to avoid the criminalization of seemingly innocent minor assistance to individuals who happen to be members of foreign terrorist organizations."  *Paracha*, 2006 WL 12768, at *29.  *See, e.g.*, *Sattar*, 272 F. Supp. 2d at 359 (finding unconstitutionally vague § 2339B's prohibition on the provision of "communications equipment" and "personnel"); *HLP II*, 352 F.3d at 403 (striking the terms "personnel" and "training" as void for vagueness under the First and Fifth Amendments).

For these reasons, the Court rejects Warsame's contention that § 2339B imposes liability in the absence of personal guilt and denies Warsame's motion to dismiss on these grounds.

---

[15] Whether the donor knew the recipient was a *member* of a FTO could, of course, be relevant to a determination that the donor ultimately intended the contribution to go to the FTO itself.  Nonetheless, the prosecution must prove that the donor knowingly provided material support or resources to the FTO.

## V.    FTO DESIGNATION PROCEDURE

Finally, Warsame contends that the FTO designation procedure under 8 U.S.C. § 1189(a) violates due process because it does not provide an organization with meaningful notice or judicial review of its designation.  Warsame also argues that the statute is unconstitutional because it does not allow a defendant to challenge an organization's designation in a subsequent criminal proceeding.

With respect to Warsame's first argument, the Court finds that Warsame lacks standing to challenge the FTO designation procedure on behalf of Al Qaeda.  *See Sattar*, 272 F. Supp. 2d at 364 (noting that litigants do not have standing to challenge a statute "solely on the ground that it failed to provide due process to third parties not before the court"); *see also Valley Forge Christian Coll. v. Ams. United*, 454 U.S. 464, 474-75 (1982) (noting that under the doctrine of prudential standing a plaintiff must assert his own legal rights and cannot rest his claim on the legal rights of third parties).  The Court further notes that even if Warsame had standing to challenge the designation procedures, courts have found § 1189(a) to be "sufficiently precise to satisfy constitutional concerns." *HLP I*, 205 F.3d at 1137; *see also, e.g.*, *Marzook*, 383 F. Supp. 2d at 1071 (upholding constitutionality of FTO designation procedures); *People's Mojahedin Org. of Iran*, 327 F.3d at 1241-44 (same).  The Court therefore denies Warsame's motion to dismiss on grounds that the FTO designation procedure violates Al Qaeda's right to due process.

Warsame also argues that the FTO designation procedure unconstitutionally deprives him of a right to a jury determination of guilt on each element of the charged offense.  The Fifth and Sixth Amendments require that criminal convictions be based

upon "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995).   Under § 1189(a)(8), "a defendant in a criminal action . . . shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing."  8 U.S.C. § 1189(a)(8). However, the Court agrees with the unequivocal holdings of the Fourth and Ninth Circuits that the relevant element of § 2339B is the *fact* of an organization's designation as a FTO, not the *validity* of the designation.  *See Hammoud*, 381 F.3d at 331 (finding that "Congress has provided that the *fact* of an organization's designation as an FTO is an element of § 2339B, but the *validity* of the designation is not") (emphasis in original); *Afshari*, 412 F.3d at 1076.  Because the validity of the designation is not an element of the offense, Warsame's inability to challenge the validity under § 1189(a)(8) does not deprive him of his constitutional rights.  The Court therefore denies Warsame's motion to dismiss on this basis.

## ORDER

Based on the foregoing records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Warsame's Motion to Dismiss Counts 1 and 2 of the Superseding Indictment [Docket No. 41] is **DENIED**.

DATED:   March 12, 2008                _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                      United States District Judge